## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

Jay Dewayne Ward,            )
                                )
        Petitioner/Defendant,      )      Civil Action No. 12-00269-CG
                                )
v.                         )      Criminal No. 09-00121-CG
                                )
United States of America,    )
                                )
        Respondent.           )

## REPORT AND RECOMMENDATION

Petitioner Jay Dewayne Ward, a federal prison inmate proceeding *pro se*, has filed a timely motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and memorandum in support (Doc. 92). The United States has filed a response in opposition (Doc. 94), to which Ward has replied (Doc. 96).[1] This action is now before the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Proceedings. And, for the reasons explained herein, it is **RECOMMENDED** that Ward's § 2255 petition be **DENIED** and that the Court find that he is not entitled to a certificate of appealability and is therefore not entitled to appeal *in forma pauperis*.

## I.    The Underlying Criminal Case and Direct Appeal

An eighty-eight (88)-count indictment (Doc. 1) was returned against Ward

---

[1]    Ward has also filed a supplemental brief, asserting that a recent decision of the United States Supreme Court, *Alleyne v. United States*, --- U.S. ----, 133 S. Ct. 2151 (2013), affords him relief (Doc. 98).

and his co-defendant, Earl Gene Goodson, Jr., in May 2009. The indictment contained one count of conspiring to manufacture more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 846 (Count 1); 86 counts of possession of pseudoephedrine with knowledge that it would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2)—29 against Ward and 57 against Goodson—(Count 2 through Count 87); and one forfeiture allegation (Count 88). In July 2009, Ward was arraigned (*see* Docs. 5, 7-9, 16-17), and Neil L. Hanley, Esq., a member of the Court's Criminal Justice Act (CJA) Panel, was appointed to represent Ward (*see* Docs. 12, 13).

On September 21, 2009, Ward pleaded guilty, without a plea agreement, to all applicable counts of the indictment. (*See* Docs. 50, 85.) After a hearing, conducted March 31, 2010, Ward was sentenced to 151 months imprisonment as to each count, all to run concurrently. (*See* Docs. 68, 80.)

Ward appealed to the Eleventh Circuit (*see generally* Doc. 91; *United States v. Ward*, 416 Fed. App'x 59 (11th Cir. Feb. 15, 2011) (per curiam)), and Mr. Hanley continued to represent him on direct appeal. The Eleventh Circuit found the sentence this Court imposed to be reasonable and affirmed. *See Ward*, 416 Fed. App'x at 61.

## II.    <u>Habeas Claims</u>

Ward asserts four claims in his habeas petition. The first three claims concern whether his trial and appellate counsel, Mr. Hanley, was constitutionally ineffective. Ward's fourth claim is that the trial court itself committed error at sentencing. The four claims will be addressed in turn below.

## A. Ineffective Assistance of Counsel Claims

### 1. *Strickland* Standard

To establish his claims of ineffective assistance of counsel, Ward is required to show ***both*** that his attorney's representation fell below "an objective standard of reasonableness"—the "performance prong"—***and*** that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different—the "prejudice prong." *See generally Strickland v. Washington*, 466 U.S. 668 (1984). He "bears the burden of proof" as to both prongs "and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926 (2002); *accord Cooper v. Secretary, Dep't of Corr.*, 646 F.3d 1328, 1351 (11th Cir. 2011).

To succeed on the performance prong, Ward "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted); *accord Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005). That "presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel." *Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir. 2005). As the Supreme Court has explained,

"[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689. The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Id.* at 690.

*Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 788 (2011) (some internal citations modified or omitted); *see also Pair v. Cummins*, 373 Fed. App'x 979, 981-82 (11th Cir. Apr. 20, 2010) (per curiam) ("The performance prong['s] . . . standard is that of a reasonable attorney, not a 'paragon of the bar' or an 'Aristotle' or a 'Clarence Darrow.'" (quoting *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007); *Yarborough v. Gentry*, 540 U.S. 1, 11 (2003))); *Gonzalez v. United States*, Nos. 09–22386–Cv–JORDAN; 07–20759–Cr–JORDAN, 2010 WL 2367356, at *5 (S.D. Fla. Apr. 21, 2010) ("The court's role in reviewing ineffective assistance of counsel claims is not to 'grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within 'wide range of professionally competent assistance.'" (quoting *Van Poyck v. Florida Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002))), *report and recommendation adopted*, 2010 WL 2366531 (S.D. Fla. June 14, 2010).

"The test for [deficiency, moreover,] is not whether counsel could have done

more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc). Rather, the inquiry under *Strickland* is limited to "whether some reasonable lawyer could have acted, in the circumstances, as defense counsel acted . . . ." *Conklin v. Schoefield*, 366 F.3d 1191, 1204 (11th Cir. 2004) (quoting *Waters*, 46 F.3d at 1518); *see also Moreno v. United States*, Criminal No. 1:06–CR–461–CC–GGB; Civil Action No. 1:10–CV–0164–CC–GGB, 2012 WL 7829200, at *4 (N.D. Ga. Mar. 13, 2012) ("The test [for deficiency] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992))), *report and recommendation adopted*, 2013 WL 1339718 (N.D. Ga. Apr. 1, 2013); *id.* ("[P]etitioner must demonstrate that 'no competent counsel would have taken the action that his counsel did take.'" (quoting *United States v. Freixas*, 332 F.3d 1314, 1319-20 (11th Cir. 2003))).

And, in order to avoid the distorting effects of hindsight, a habeas court must "evaluate the reasonableness from counsel's perspective at the time of the alleged error in light of all circumstances of the case." *Griffin v. United States*, 204 Fed App'x 792, 794-95 (11th Cir. Oct. 25, 2006) (per curiam) (citing *Strickland*, 466 U.S. at 690). Likewise, "[t]actical decisions regarding trial strategy are left to the sound judgment of counsel and are entitled to a 'strong presumption' of competence." *Kearney v. United States*, Nos. 2:04–CR–15–1–BO; 2:09–CV–55–BO, 2010 WL

2402887, at *2 (E.D.N.C. June 14, 2010) (quoting *Strickland*, 466 U.S. at 689, and citing *Bell v. Cone*, 535 U.S. 685, 698 (2002)). For a petition challenging chosen trial strategies to be successful, therefore, it must not be "devoid of the factual basis that is required to show that counsel's tactics were manifestly unreasonable." *Id.*

In addition, Ward "must affirmatively prove prejudice" to succeed on an ineffective assistance of counsel claim. *Butcher v. United States*, 368 F.3d 1290, 1294 (11th Cir. 2004). "[T]hat the errors had some conceivable effect on the outcome of the proceeding" is insufficient to show prejudice. *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 693); *see also Evans v. Secretary, Fla. Dep't of Corr.*, 699 F.3d 1249, 1270 (11th Cir. 2012) (under *Strickland*, "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors," and that "[t]he likelihood of a different result must be substantial, not just conceivable" (citations omitted)).

Finally, when applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008 (1999); *see also Butcher*, 368 F.3d at 1293 ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

> **2.      Ground One ("Counsel rendered ineffective assistance by failing to raise a *Booker* violation; Failed to challenge the improper multiplier method used to calculate drug quantity; failed to request continuance to supplement**

**sentence memorandum; and failed to request rule of lenity application at sentencing.")**

All of the sub-grounds listed under Ground One, except the *Booker* claim, are asserted against Mr. Hanley in his capacity as Ward's counsel at sentencing.

### i. Failure to challenge trial court's methodology to determine drug quantity

As to the second sub-claim, in sum, Ward objects to his counsel's "failure to challenge the multiplier method used by the court to arrive at base offense level 34, which failure[, Ward contends,] violated [his] Sixth Amendment right to effective assistance of counsel." (Doc. 92-1 at 5.) This sub-claim for ineffective assistance fails because Ward cannot show *Strickland* prejudice.

At the sentencing hearing, the Assistant United States Attorney sought the following clarification from the Court:

> [AUSA] BEDWELL: . . . But if I might, one additional point of clarification. And I perhaps just missed it. Did the Court find that the sentence was appropriate even if the guidelines were incorrectly calculated?
>
> THE COURT: Yes. I do find that the 151-month sentence is appropriate to meet the statutory purposes of sentencing . . . [e]ven if that was not the guideline sentence.

(Doc. 80, sentencing hearing tr., at 51:24-52:8.) And, in denying Ward's direct appeal, the Eleventh Circuit—relying on this statement by the trial court—held that, because the sentence imposed was reasonable, "even if we were to assume that the court erred in its guideline calculations, the errors were harmless."[2] *Ward*, 416

---

[2]     Under the law of the case doctrine, this Court is bound by the Eleventh Circuit's determination that any error in sentencing was harmless "unless one of the following exceptions applies: '(1) new evidence is presented, (2) there has been an intervening change in controlling law, or (3) the prior appellate decision is clearly erroneous

Fed. App'x at 61 (citing *United States v. Keene*, 470 F.3d 1347, 1348-49 (11th Cir. 2006) (which, as characterized by the panel in *Ward*, "explain[ed] that a Guidelines calculation error is harmless, and thus does not require remand, when (1) the record includes evidence that the district court would have reached the same result even if it had decided the Guidelines issue the other way, and (2) the sentence imposed would be reasonable even if the Guidelines issue had been decided the other way"); *United States v. Tampas*, 493 F.3d 1291, 1305 (11th Cir. 2007)).[3] Thus, because Ward's "guideline calculation error was harmless, [his] counsel's failure to raise the issue[; that is, object to how the Guidelines were calculated,] even if deficient, could not have resulted in prejudice." *Wilcox v. United States*, No. 8:10–CV–1917–T–27EAJ; Crim Case No. 8:07–CR–163–T–27EAJ, 2011 WL 5975683, at *5 (M.D. Fla. Nov. 29, 2011) (citing *Ward*, 416 Fed. App'x at 61; *Keene*, 470 F.3d at 1348-49); *see also United States v. Myers*, Criminal No. 08–00074–WS; Civil Action No. 10–

---

and would result in manifest injustice if implemented.'" *Fisher v. United States*, Criminal No. 07–00288–KD–N; Civil Action No. 09–00815–KD, 2012 WL 6680315, at *5 (S.D. Ala. Dec. 3, 2012) (quoting *United States v. Lynn*, 385 Fed. App'x 962, 965 (11th Cir. July 8, 2010) (per curiam)), *report and recommendation adopted*, 2012 WL 6678608 (S.D. Ala. Dec. 21, 2012). "Pursuant to this doctrine, any claim by [Ward] that his sentence was excessive is barred from reconsideration, ***even if couched as a claim of ineffective assistance of counsel***, unless one of the above exceptions applies." *Id.* (citation omitted and emphasis added). No new evidence has been presented. There has been no intervening change in controlling law. And the Eleventh Circuit's decision on direct appeal is neither clearly erroneous nor will it result in manifest injustice if implemented. Thus, the law of the case doctrine applies.

[3]      *See also id.* ("Our review [pursuant to the factors spelled out in 18 U.S.C. § 3553(a)] confirms that the sentence imposed here was reasonable. The district court considered the seriousness of the offense, the large quantity of drugs involved in the conspiracy in general, and the quantity with which Ward was directly involved. The court also cited the need to punish and deter Ward's behavior. Based on these factors, and given Ward's lengthy criminal history, we conclude that this sentence is reasonable."); *accord United States v. Dean*, 517 F.3d 1224, 1232 (11th Cir. 2008).

00410–WS–N, 2011 WL 6102011, at *10-11 (S.D. Ala. Nov. 7, 2011) (where this Court unequivocally stated that it would apply the same sentence regardless of any asserted Guidelines error—"So, regardless of whether the Court is wrong or right with regard to your objections of the Guidelines as discussed, including criminal history points, it is of no moment because the Court finds that a guideline sentence does not provide the requirements of sentencing as found in Section 3553(a)."—and that sentence was upheld as reasonable by the Eleventh Circuit, the undersigned, on habeas review, noted, "[e]ven if it could be said that counsel was responsible for the delay in raising a challenges to the inclusion of these prior convictions, it was harmless error, because the Court clearly stated that it was 'not going to matter anyway'"), *report and recommendation adopted*, 2011 WL 6101956 (S.D. Ala. Dec. 8, 2011).[4] Because Ward cannot show prejudice, this sub-claim fails.

---

[4]     Accordingly, a "guideline error is harmless if the district court **unambiguously** expressed that it would have imposed the same sentence, even without the erroneous calculation." *Deonarinesingh v. United States*, --- Fed. App'x ----, 2013 WL 5763176, at *4 (11th Cir. Oct. 25, 2013) (per curiam) (citing *United States v. Barner*, 572 F.3d 1239, 1248)) (emphasis added); *cf. United States v. Alvarez*, 506 F. Supp. 2d 1285, 1291-92 (S.D. Fla. 2007) ("The Court made clear at sentencing that the most reasonable sentence under the circumstances for each Defendant was the statutory maximum incarceration.  Because the Court would have sentenced Defendants to the same sentence even if the Court had found a sentencing guideline sufficiently analogous, any error is harmless.  Because any error is harmless, the appeal will have no impact on the sentence; therefore, the appeal is frivolous." (record citation omitted)).

"In contrast, where [a] district court . . . emphasize[s] that the guideline range influenced the sentence, [any] calculation error [is] not harmless." *Deonarinesingh*, 2013 WL 5673176, at *4 (citing *United States v. Paley*, 442 F.3d 1273, 1278-79 (11th Cir. 2006) (per curiam)).  And, in such a case, it would be error for a district court, **on collateral review**, to rely on *Keene* and its progeny.  *See id.* (determining that, there, "the district court's reliance on *Keene* on collateral review [was] misplaced[ because, d]uring sentencing, the district court repeatedly stated that it relied on the guidelines range . . . . Even though the court noted its authority to disregard the guidelines in reaching a sentence, it also emphasized that the guidelines would be 'highly suggestive of the appropriate and proper sentence that should be imposed.'  [Thus, it was] clear that the erroneous calculation

### ii.	Failure to seek continuance/amend sentencing memorandum

Ward next contends that his counsel was ineffective because he "failed to seek a continuance after the sentencing hearing in order to amend or supplement the sentencing memorandum of law, after a careful review of the hearing transcripts, before the sentence was imposed.  This was necessary to make a colorable argument concerning [the veracity of the testimony presented at the sentencing hearing]."  (Doc. 92-1 at 9.)  Ward further contends that

> [i]t was impossible for counsel to make a colorable argument at sentencing in petitioner's defense, without first reviewing the entire hearing transcripts . . . .  It is only after [a] thorough review[, Ward argues,] could counsel [challenge the testimony given at the hearing testimony].  This was of great importance [because] the court based its sentencing determination on McDonald's testimony where he stated that [Ward] "probably" provided 40,000 [milligrams] of the pills cooked on a weekly basis."

(*Id.*)

As the excerpt above clearly demonstrates, the basis for Ward's belief that his counsel was ineffective because he failed to request a continuance, to amend the sentencing memorandum, is that the Court committed a Guidelines calculation error through the method it employed to determine Ward's base offense level.  As explained in detail above, Ward cannot show *Strickland* prejudice with regard to such a claim.  Thus, this sub-claim also fails.

### iii.	Failure to request application of the rule of lenity

'affect[ed] the district court's selection of the sentence imposed[,' rendering t]he erroneous calculation . . . not harmless." (second quotation to *Paley*, 442 F.3d at 1278) (footnote omitted)); *see also id.* at *5 ("[B]ecause we would have found that (1) the district court erred in calculating the guidelines, and (2) the error was not harmless, Deonarinesingh has established prejudice" pursuant to *Strickland*. (citation omitted)).

As to the final sentencing hearing sub-claim, Ward contends that, because "[t]he evidence [as to drug quantity at sentencing] all together was ambiguous," he was entitled to the rule of lenity. (Doc. 92-1 at 8.) Because, he further contends, his counsel "failed to request an application of the rule of lenity, [Ward was deprived of the] right to effective assistance at a very critical stage of the proceeding." (*Id.*)

Although Ward fails to explain ***how*** the rule of lenity operates, "[t]he Supreme Court has stated that 'the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the ***statute*** such that the Court must simply guess as to what Congress intended.'" *United States v. Carr*, Criminal Action File No. 1:06–cr–275–TCB, 2013 WL 4855341, at *5 (N.D. Ga. Sept. 11, 2013) (quoting *Maracich v. Spears*, --- U.S. ----, 133 S. Ct. 2191, 2209 (2013) (citation and internal quotation marks omitted)) (emphasis added)[5]; *see also Bifulco v. United States*, 447 U.S. 381, 387 (1980) ("[T]he touchstone of the rule of lenity is ***statutory*** ambiguity." (internal quotation marks omitted and emphasis added)).

"The rule of lenity may apply when interpreting the Sentencing Guidelines [and] provides that where there are two rational readings of the Sentencing Guidelines, the court should apply the interpretation giving the lease harsh sentence." *Childress v. United States*, Criminal Case No. 00–80466, 2013 WL

_____

[5]    In *Carr*, the district court held that because the defendant "was properly sentenced as a career offender, his argument that his counsel was ineffective for failing to object to his sentence[—*i.e.,* raise the applicability of the rule of lenity—was] meritless." *Id.*

3353903, at *3 (E.D. Mich. July 3, 2013) (citing *United States v. Galaviz*, 645 F.3d 347, 362 (6th Cir. 2011)); *accord United States v. Jeter*, 329 F.3d 1229, 1230 (11th Cir. 2003) (per curiam). That said, "[t]he rule of lenity does not permit [a court] to create an ambiguity where none exists." *United States v. Bland*, 961 F.2d 123, 128 (9th Cir. 1992); *cf. Mallett v. United States*, 334 F.3d 491, 504 (6th Cir. 2003) ("A statute or Sentencing Guideline is not '"ambiguous" for purposes of lenity merely because it [is] *possible* to articulate a construction more narrow than that urged by the Government.'" (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990) (emphasis in original))).

The rule is also "not a catch-all maxim that resolves all disputes in the defendant's favor—a sort of juristical 'tie goes to the runner.' Rather, the rule is cabined to resolve ambiguous *questions of law*." *United States v. Gonzalez*, 407 F.3d 118, 124 (2d Cir. 2005) (collecting cases) (emphasis added). Accordingly, in *Gonzalez*, the Second Circuit, rejected am argument, similar to Ward's here, "that the rule of lenity requires that factual ambiguities affecting sentencing must always be resolved in a defendant's favor. Such a mandate would straightjacket a district court in exercising its authority—that endures post-*Booker*—to resolve disputed facts by a preponderance of the evidence when arriving at a Guidelines sentence." *Id.* at 125 (collecting cases).

First, because if this Court "erred in its guideline calculations, [which necessarily included its consideration of the evidence as to drug quantity to be attributed to Ward,] the errors were harmless[,]" *Ward*, 416 Fed. App'x at 61, this

sub-claim suffers from the same inability to show *Strickland* prejudice as the sub-claims discussed above. Moreover, although it does not appear the Eleventh Circuit has spoken to the issue, at least three courts of appeals have held, without reservation, that the rule of lenity does not apply to challenges to a district court's drug quantity findings. *See United States v. Aponte-Guzman*, 696 F.3d 157, 160 (1st Cir. 2012) ("[T]he case law makes pellucid that the rule of lenity, which has a ***laser-like statutory focus***, does not apply to drug-weight calculations under the sentencing guidelines. Such calculations do not present questions of ***statutory ambiguity*** and, therefore, do not raise concerns that may be redressed through an application of the rule of lenity." (citations omitted and emphasis added)); *Gonzalez*, 407 F.3d at 124 ("Gonzalez [ ] attempts to impose the rule of lenity to resolve an alleged factual ambiguity in her favor. To date, such an attempt to extend the rule of lenity has been addressed (and rejected) by only one other circuit. *See United States v. McEntire*, 153 F.3d 424, 438 n.16 (7th Cir. 1998) (holding in challenge to drug quantity finding that "[t]he rule of lenity does not apply to the district court's application of the Sentencing Guidelines to the facts"). We join the Seventh Circuit in holding that the rule of lenity is not applicable to a district court's fact-finding role at sentencing.").

Because Ward can neither show prejudice—for the same reasons stated as to the first and second sentencing sub-claims—nor show that the rule of lenity should apply to a district court's calculation of drug quantity pursuant to the sentencing guidelines, this sub-claim also fails.

### iv. Failure to argue a *Booker* violation to the Eleventh Circuit

As stated above, Mr. Hanley was also Ward's counsel on direct appeal. And, without further explanation, Ward asserts that Mr. Hanley was, presumably, ineffective on appeal because he "failed to argue a *Booker* violation in the Appellate Court." (Doc. 92-1 at 7.) Although

> *Booker* holds that the Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury[, w]hen the district court applies the Guidelines in an advisory manner, nothing in *Booker* prohibits district courts from making, under a preponderance-of-the-evidence standard, additional factual findings that go beyond a defendant's admissions.

*United States v. Smith*, 480 F.3d 1277, 1281 (11th Cir. 2007) (citations and internal quotations omitted); *see also United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004) ("The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing.")

Here, it is quite clear that, at sentencing, the Court "applie[d] the Guidelines in an advisory manner." *Smith*, 480 F.3d at 1281. (*See, e.g.,* Doc. 80 at 51:11-13 ("As I indicated, I do find the **advisory** guideline range is appropriate to the facts and circumstances of this case and meets the statutory purposes of sentencing." (emphasis added).) Thus, "[b]ecause the District Court followed the post-*Booker* protocol for determining the reasonableness of [Ward's] sentence in light of the § 3553(a) factors, a claim of *Booker* error had no reasonable probability of success on appeal, and the failure of appellate counsel to raise it did not constitute ineffective

assistance." *Smith v. United States*, Civil Action Nos. 1:12–CV–868–WSD–AJB, 1:12–CV–869–WSD–AJB; Criminal Action Nos. 1:08–CR–190–WSD–AJB–8, 1:09–CR–341–WSD–AJB–1, 2012 WL 7800836, at *6 (N.D. Ga. Nov. 20, 2012) (citing *Strickland*, 466 U.S. at 694), *report and recommendation adopted*, 2013 WL 1189490 (N.D. Ga. Mar. 21, 2013).

### 3. Ground Two ("Counsel failed to request *Brady* materials and specific pharmacy records for impeachment purposes at hearing and to challenge drug quantity at sentencing.")

Ward theorizes (1) that his counsel "failed to utilize the complete records disclosed to prepare and file a meritorious sentencing memorandum" and (2) that his counsel either failed to "request" materials pursuant to Fed. R. Crim. P. 16 and *Brady **and/or*** the Government failed to disclose such materials. (Doc. 92-1 at 13; *compare id.* at 12 ("It was impossible for counsel to make a colorable argument at sentencing with regards [sic] to drug quantity, without first reviewing all statements made by coconspirators to law enforcement, and all pharmacy records, including Meth Check records within the government's possession. These records should have been requested pursuant to [Rule] 16 and *Brady* . . . ."), *with* Doc. 96 at 5 (in response to the Government's argument that Ward failed to identify the records he contends should have been requested/disclosed, "its [sic] either that the Government did not disclose the Pharmacy Records for the other coconspirators, or that counsel neglected to request these records pursuant to *Brady v. Maryland*").)

In his petition, Ward first informs the Court that "[d]uring pre-trial, the government disclosed coconspirators['] statements and various records reflecting pill

purchases at various pharmacies." (Doc. 92-1 at 10 (citing Exs. A-D [Doc. 92-2 at 4-20] (witness statements from Carlos McDonald and Charles Stagner and records of drug purchases by Earl Goodson).) After making an argument as to what he contends should be the proper drug quantity attributable to him (*see id.* at 10-12), Ward argues,

> It's only after all these records and evidence were reviewed in their totality, could counsel prepare and file a meritorious sentencing memorandum as required by the Sixth Amendment. Likewise, these records and *Brady* Materials would have seriously impeached McDonald's testimony at the hearing, wherein which he testified that petitioner provided him with a weekly average of 40,000 [milligrams] of pills. The evidence presented at the hearing fell short of the complete evidence in the government's possession such as; pharmacy records for McDonald, Opal Miller, Shannon Montgomery, Timmy Williams, Charles Busby and other unnamed coconspirators, including statements made by any of these individuals spoken about by McDonald and Stagner to law enforcement and counsel failed to seek such critical evidence at the most critical stage of petitioner's criminal proceeding.
>
> Counsel not only failed to utilize the complete records disclosed to prepare and file a meritorious sentencing memorandum, but also failed to seek the pharmacy records for McDonald and Stagner, and the others who were supplying McDonald with pills during March 2008 to August 8, 2008. This error on counsel's part deprived petitioner of his right to conduct an effective cross-examination of McDonald and Stagner at the hearing with impeachable materials.

(*Id.* at 12-13.)

First, to the extent that Ward is contending that his trial counsel was ineffective as to the Court's determination of the drug quantity attributable to him, to calculate his guideline range, ***again***, any guideline calculation error was harmless. *See Ward*, 416 Fed. App'x at 61; *Keene*, 470 F.3d at 1348-49. Accordingly, even if counsel was deficient in this regard, such deficiency "could not

have resulted in prejudice." *Wilcox*, 2011 WL 5975683, at *5.

Next, to the extent Ward is arguing that his counsel was ineffective because the Government has somehow violated ***its*** disclosure obligations pursuant to Rule 16, Federal Rules of Criminal Procedure, and *Brady v. Maryland*, 373 U.S. 83 (1963),[6] any "fault lay not with [counsel] but with the prosecution." *Sanders v. United States*, Civil Action No. 07-0300-WS; Criminal Action No. 04-0256-WS, 2007

---

[6] Pursuant to *Brady*, "prosecutors have a due-process obligation to disclose 'evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *United States v. Bowe*, 426 Fed. App'x 793, 798 (11th Cir. May 13, 2011) (per curiam) (quoting *Brady*, 373 U.S. at 87). To establish a violation of *Brady*, "(1) the evidence must be favorable to the accused, because it is either exculpatory or impeaching; (2) the evidence must have been **suppressed** by the State, either willfully or inadvertently; and (3) the evidence must be **material** so as to establish prejudice." *Id.* (quoting *United States v. Naranjo*, 634 F.3d 1198, 1212 (11th Cir. 2011) (in turn quoting *Stephens v. Hall*, 407 F.3d 1195, 1203 (11th Cir. 2005))) (emphasis added).

"'Materiality' under *Brady* tracks the prejudice standard under *Strickland*." *Bowe*, 426 Fed. App'x at 798 (citing *Jennings v. McDonough*, 490 F.3d 1230, 1243 (11th Cir. 2007) ("The prejudice prong of *Strickland* incorporates the same standard used for assessing the materiality of evidence under *Brady*, i.e., 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (quoting *Strickland*, 466 U.S. at 694))); *see also Shorter v. United States*, Nos. 8:11–CV–1941–T–24EAJ; 8:08–CR–270–T–24EAJ, 2012 WL 933331, at *6-7 (M.D. Fla. Mar. 20, 2012) ("Suppressed evidence is material if there is a reasonable probability that the results of the proceedings would have been different had the evidence been disclosed to the defense." (citing *United States v. Perez*, 473 F.3d 1147, 1150 (11th Cir. 2006))).

While it appears that Ward's convoluted *Brady*-Rule 16 argument is aimed at the effectiveness of his trial counsel (not targeted at the Government), and Ward only shifts the blame to the Government on reply, in response to the Government's claim that he failed to identify the records he now claims should have been, but were not, requested/disclosed (*see* Doc. 96 at 5), it is obvious that—***even if*** a substantive *Brady* claim was not procedurally defaulted (because it was available and not presented on direct appeal)—Ward has failed to state a colorable claim here. *See, e.g., Parker v. United States*, Nos. 3:08–cv–774–J–32TEM; 3:04–cr–244–J–32HTS, 2009 WL 2449252, at *4-5 (M.D. Fla. Aug. 7, 2009) ("Petitioner's proffered evidence is insufficient to support his claim that the government violated *Brady* because there is little chance that disclosure of the evidence[, if such evidence actually exists,] would have led to a different result at trial. Petitioner's claim to the contrary rests on a trail of suppositions that do not hold up when closely examined.").

WL 3124469, at *3 (S.D. Ala. Oct. 24, 2007) (Steele, J.) (in which the petitioner asserted his counsel was ineffective for the Government's failure to disclose allegedly available *Giglio* material: "The threshold defect in the petitioner's claim is its failure to allege that any 'leniency agreements' existed at the time [counsel] represented him. Even if there were such agreements, and even if [counsel] was ignorant of them, the fault lay not with him but with the prosecution.").

As was the case in *Sanders*, Ward's order on arraignment (Doc. 17), entered July 20, 2009, stated, "**Discovery in this action shall be conducted according to the requirements of Local Rule 16.13.**" (*Id.* at 2 (emphasis in original).) "[I]t is the Court's policy to rely on the standard discovery procedure as set forth in this Rule as the sole means of the exchange of discovery in criminal actions except in extraordinary circumstances." *Sanders*, 2007 WL 3124469, at *3 (quoting S.D. ALA. L.R. 16.13(a). And Local Rule 16.13(b), regarding initial disclosures in criminal cases, provides in pertinent part:

> **(1) Disclosure by the Government.** At arraignment, or on a date otherwise set by the Court for good cause shown, the government shall tender to defendant the following:
>
> > **(A) Fed.R.Crim.P. 16(a) Information.** All discoverable information within the scope of Rule 16(a) of the Federal Rules of Criminal Procedure, *together with a notice pursuant to Fed.R.Crim.P. 12(d) of the government's intent to use this evidence.*
>
> > **(B) *Brady* Material.** All information and material known to the government which may be favorable to the defendant on the issues of guilt or punishment, without regard to materiality, within the scope of *Brady v. Maryland*, 373 U.S. 83 (1963).

*Id.* (emphasis in original).[7] The order on arraignment in Ward's case further made it clear, moreover, that "[t]he Government tendered [these] required initial disclosures to [Ward] prior to or at arraignment." (Doc. 17 at 2.) It is clear then that "it was up to the government, not [Mr. Hanley], to ensure that [all Rule 16 and *Brady* materials] were provided [to Ward]. Accordingly, [Ward] cannot establish that [counsel] performed deficiently in not obtaining any [such materials], and [any] claim of ineffective assistance [based on the same] must fail." *Sanders*, 2007 WL 3124469, at *3.

Finally, to the extent Ward is now arguing that Mr. Hanley, an experienced criminal defense attorney, should have "done more"—*i.e.,* filed a more complete sentencing memorandum or been more thorough when he cross-examined the Government's witnesses at sentencing—such conjecture falls far short of "[s]urmounting *Strickland*'s high bar . . . ." *Padilla*, 559 U.S. at 371; *see Waters*, 46 F.3d at 1518 ("The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more." (citing *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) ("Trial counsel did enough. A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance."))). It is clear that, as to presenting Ward's position on the drug quantity at sentencing, Mr. Hanley acted as a reasonable attorney could have

---

[7] Subsection (b)(1)(C) requires the government to unilaterally disclose "[t]he existence and substance of any payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective witnesses, within the scope of *United States v. Giglio*, 405 U.S. 150 (1972)."

acted, in the circumstances, which is the threshold an attorney must cross to not be ineffective under *Strickland*'s performance prong. Thus, Mr. Hanley "function[ed] as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.[8]

### 4. Ground Three ("Counsel Failed to Seek Minor Role Adjustment.")

In the PSR, Ward received no reduction for his role in the offense. (*See* Doc. 60, ¶ 29.) Mr. Hanley amended Ward's position as to the sentencing factors on March 26, 2010 to object to this: "The Defendant objects to not being assigned a minimal role and a four level reduction" (*see* Doc. 67), and he argued for this reduction at sentencing (*see* Doc. 80 at 45:19-46:7). Ward now contends that "a careful review of the disclosed evidence[] does not support a 'minimal role' but instead a 'minor role' . . . . Counsel failed to conduct a thorough review of the evidence, which failure caused him to argue for an adjustment not supported by the evidence." (Doc. 92-1 at 13.)

U.S.S.G. § 3B1.2 allows a two to four level reduction in offense level for minimal and minor participants. The Sentencing Guidelines Manual

> explains that a minimal participant "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. n.4. The U.S.S.G. also explains that a minor participant means any participant who is "less

---

[8]    Relatedly, if Ward is challenging Mr. Hanley's strategy as to the cross-examination of witnesses at sentencing, etc., such "[t]actical decisions . . . are left to the sound judgment of counsel and are entitled to a 'strong presumption' of competence." *Kearney*, 2010 WL 2402887, at *2. And Ward has not presented this Court with "the factual basis that is required to show that [Mr. Hanley's] tactics were manifestly unreasonable." *Id.*

culpable than most other participants . . . ." U.S.S.G. § 3B1.2, cmt. n.5.

*Bellamy v. United States*, Nos. 4:03–cr–00474–CWH–3; 4:10–cv–70210–CWH, 2013 WL 4080709, at *4-5 (D.S.C. Aug. 13, 2013) (also noting, "an offense level reduction for a minimal or minor participant should be applied only when 'a particular defendant is ***less culpable*** than other members of the group ***to such a degree that a distinction should be made*** at sentencing between him and the other participants'" (quoting *United States v. Gordon*, 895 F.2d 932, 935 (4th Cir. 1990) (emphasis added)); *accord United States v. Joseph*, --- Fed. App'x ----, 2013 WL 5303264, at *14 (11th Cir. Sept. 23, 2013) ("[A] defendant is not automatically entitled to a minor role reduction merely because he was '***somewhat less culpable*** than the other discernible participants.'" (quoting *United States v. Bernal–Benitez*, 594 F.3d 1303, 1320-21 (11th Cir. 2010)) (emphasis added)); *United States v. Neils*, 156 F.3d 382, 383 (2d Cir. 1998) (Departure under § 3B1.2 not warranted "solely upon a finding that [the defendant] is ***less culpable*** than the co-defendants" because § 3B1.2 requires the Court "to gauge the appellant's culpability relative to the elements of the offense of conviction." (emphasis added)); *United States v. Partee*, 31 F.3d 529, 534 (7th Cir. 1994) ("A reduction for a minor participant rests on whether the defendant was '***substantially less culpable*** than the conspiracy's other participants.'" (quoting *United States v. DePriest*, 6 F.3d 1201, 1214 (7th Cir. 1993)) (emphasis added)); *United States v. Brown*, 54 F.3d 234, 241 (5th Cir. 1995) (same).

Ward "bears the burden of proving [his] minor role by a preponderance of the evidence." *United States v. Setts*, Nos. 5:03cr54/MCR; 5:05cv129/MCR/MD, 2006

WL 5160612, at *5 (N.D. Fla. Feb. 22, 2006) (citing *United States v. Boyd*, 291 F.3d 1274, 1277 (11th Cir. 2002)). And "[t]o prevail on an ineffective assistance of counsel claim for a mitigating role adjustment, courts have held whether the defendant was prejudiced by counsel's failure to request a § 3B1.2 adjustment depends on whether the district court would have granted the request, a matter only the district court can decide." *United States v. Castro*, No. CR00–3020–MWB, 2004 WL 1746092, at *15 (N.D. Iowa Aug. 4, 2004) (citations and internal quotation marks omitted)).

At sentencing, after counsel presented his "minimal role" argument, the Court found that Ward was "***at least coequal*** in terms of responsibility and is not a minimal participant in this conspiracy." (Doc. 80 at 46:4-7 (emphasis added).) This finding belies Ward's position on collateral attack that, while the evidence admittedly does not support a minimal role reduction, it does support a minor role reduction. The Court neither found Ward to be "substantially less culpable," "less culpable," nor even "somewhat less culpable"; instead, the Court found he was "at least coequal[ly] culpable." *Cf. Bernal–Benitez*, 594 F.3d at 1320-21; *Neils*, 156 F.3d at 383; *DePriest*, 6 F.3d at 1214; *Brown*, 54 F.3d at 241. Thus, because the evidence neither supports a minor nor a minimal role reduction, there can be no prejudice to Ward because his counsel urged the Court, unsuccessfully, for a four-level reduction instead of a two-level reduction. *See, e.g., Bellamy*, 2013 WL 4080709, at *4-5 ("Even assuming, arguendo, that counsel's performance was deficient, the petitioner must also 'show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.'  The

petitioner bases his prejudice argument on his contention that if counsel had argued

for a reduction in the petitioner's offense level, he would have received it.  However,

the petitioner has not argued, and the record does not reflect . . . that the Court

would have accepted the argument." (quoting *Strickland*, 466 U.S. at 694)); *United

States v. Moreira*, Criminal Action No. 06–20021–13–KHV, 2010 WL 1174306, at

*5-6 (D. Kan. Mar. 23, 2010) ("Even if counsel was somehow deficient in how he

raised the objection, defendant has not shown that if counsel had raised the

objection in a different manner, the result of the sentencing proceeding would have

been different."); *United States v. Barnes*, 228 F. Supp. 2d 82, 87 (D. Conn. 2002)

("[E]ven if Barnes was, as he now claims, the low man on the totem pole, Barnes

cannot show any prejudice arising from his counsel's failure to make the § 3B1.2

argument because the Court would not have had a basis for granting a minimal or

minor role reduction [based on] the evidence at the sentencing hearing[.]").

**B.      Sentencing Court Claim (Ground Four)**

Ward's final ground is aimed at the Court:  "The court's use of the multiplier

method coupled with its dependence on McDonald's contradictory testimony[]

violated [Ward's] Sixth Amendment *Booker* rights."  (Doc. 92-1 at 15.)  This

argument, made outside the prism of ineffective assistance of counsel, was not

presented on direct appeal and, as such, generally cannot be made for the first time

on collateral attack.  *See Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir.

2004) ("Under the procedural default rule, a defendant generally must advance an

available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.")  Although procedural default can be excused if a petitioner can show "cause for not raising the claim of error on direct appeal **and** actual prejudice from the alleged error[,]" *Lynn*, 365 F.3d at 1234 (emphasis in original), Ward has failed to make such a showing in his petition.

"Ineffective assistance of counsel"—which Ward has attempted to show—may, however, "constitute cause to excuse procedural default." *DiPietro v. United States*, 251 Fed. App'x 606, 608 (11th Cir. Oct. 15, 2007) (per curiam) (citing *Eagle v. Linahan*, 279 F.3d 926, 937 (11th Cir. 2001)).  That is, "[a] defendant may avoid the need to show cause and prejudice on a procedurally defaulted claim by raising a substantive issue of ineffective assistance of counsel for failure to assert the claim." *Id.* (citing *Eagle*, 279 F.3d at 938); *see, e.g., Beasley v. United States*, Nos. CV610–066; CR607–008, 2010 WL 4777535, at *1 (S.D. Ga. Oct. 28, 2010) ("It is well established that 'constitutionally "[i]neffective assistance of counsel . . .  is cause"' for excusing a procedural default." (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991))), *report & recommendation adopted*, 2010 WL 4739525 (S.D. Ga. Nov. 16, 2010).

However, merely asserting a substantive claim of ineffective assistance of counsel does not "establish[] cause to excuse [ ] procedural default"; "***in order to constitute cause, ineffective assistance claims must have merit***." *Reynolds v. United States*, Nos. CV 109-061; CR 106-081, 2010 WL 1006257, at *4 (S.D. Ga. Jan.

26, 2010) (citing *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)) (emphasis added), *report & recommendation adopted*, 2010 WL 1006253 (S.D. Ga. Mar 17, 2010). As explained above, Ward has failed to make a meritorious substantive claim for ineffective assistance of counsel and, accordingly, by not raising this argument on direct appeal, Ward has defaulted on this, his fourth, habeas ground. *See, e.g., Womack v. United States*, Civil Action No. 11–285–WS; Criminal No. 8–391–WS–C, 2012 WL 3206458, at *3 (S.D. Ala. June 6, 2012) ("[W]here, as here, a habeas motion presents both a substantive ineffective-assistance-of-counsel claim and non-ineffective-assistance-of-counsel claims, to excuse procedural default and reach the merits of the non-ineffective-assistance-of-counsel claims, the substantive ineffective-assistance-of-counsel claim must be meritorious." (citing *Brown v. Virginia*, No. 1:10cv162 (JCC/IDD), 2011 WL 1897432, at *3 (E.D. Va. May 18, 2011) ("[I]t is well established that a meritless ineffective assistance of counsel claim cannot excuse a procedural default.") (citation omitted); *Taylor v. Rivera*, No. 07 Civ. 8668(PKC)(DF), 2011 WL 4471919, at *10 (S.D.N.Y. Apr. 18, 2011) ("Petitioner's ineffective assistance of counsel claim therefore lacks merit, and Petitioner cannot rely on it as a basis to excuse his procedural default[.]" (citations omitted)), *report and recommendation adopted*, 2011 WL 4472146 (S.D.N.Y. Sept. 27, 2011))), *report and recommendation adopted*, 2012 WL 3206675 (S.D. Ala. Aug. 8, 2012).

### C.    Ward's Supplemental Brief

In his supplemental brief, dated June 24, 2013, Ward "submits that the

decision in *Alleyne*[ *v. United States*, --- U.S. ----, 133 S. Ct. 2151 (2013)] is applicable to his § 2255 claims concerning the judicial fact finding that [ ] determined the total quantity of pseudoephedrine attributed to him at sentencing." (Doc. 98 at 2.)[9]

*Alleyne*, **decided on direct appeal**, addresses whether facts that increase the mandatory minimum for a crime must be submitted to the jury and proven beyond a reasonable doubt. So, even if *Alleyne* announced a new rule of law, *see Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013), that rule is not applicable to Ward's habeas petition because, quite simply, "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001). The Supreme Court has not— or at least has not yet—done so. *See United States v. Redd*, 735 F.3d 88, 91 (2d Cir. 2013) (per curiam) (explaining how a new rule could be made retroactive).[10]

---

[9]     Ward's untimely supplemental brief concerns an issue he raised in his timely petition—asserted error based on how the Guidelines were calculated—therefore, construing the late-filed amendment liberally, the supplemental brief is timely pursuant to the "relation back" principles in Fed. R. Civ. P. 15, as explained in *Davenport v. United States*, 217 F.3d 1341 (11th Cir. 2000) and its progeny, and in *Mayle v. Felix*, 545 U.S. 644 (2005)), under which an amendment to a § 2255 petition is not time-barred if the "claims filed or added [in the amendment] 'relate back' to timely-filed claims." *United States v. Sanders*, Civil Action No. 04-0042-CB; Criminal No. 98-00056-CB, 2007 WL 4285398, at *5 (S.D. Ala. Dec. 4, 2007) (citing *Davenport*); *see also United States v. Hames*, 431 Fed. App'x 846, 847 (11th Cir. June 22, 2011) (per curiam) ("Rule 15 can be used in cases where a defendant files a timely § 2255 motion and then later files an amendment **or additional motion** that relates back to the original § 2255, but would otherwise be untimely." (emphasis added)).

[10]     Although it does not appear that the Eleventh Circuit has so held, the appellate courts to address the issue all agree that *Alleyne* does not apply to cases on collateral review. *See Redd*, 735 F.3d at 91-82 (citing *In re Payne*, 733 F.3d 1027 (10th Cir. 2013); *Simpson*, 721 F.3d at 876; *United States v. Stewart*, --- Fed. App'x ----, 2013 WL 5397401 (4th Cir. Sept. 27, 2013)). Further, it appears that the district courts in this circuit

## D.     Evidentiary Hearing

This Court "'shall' hold an evidentiary hearing on a habeas petition '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *Scott v. United States*, 325 Fed. App'x 822, 824 (11th Cir. Apr. 29, 2009) (per curiam) (quoting 28 U.S.C. § 2255(b)).

> "[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.'"  *Aron* [*v. United States*], 291 F.3d [708,] 714-15 (quoting *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989)).  Yet the "district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous."  *Id.* at 715.  Thus, the petitioner needs to allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief.  If the allegations are not affirmatively contradicted by the record and the claims are not patently frivolous," the requirement of an evidentiary hearing is triggered and the petitioner must offer proof at that hearing.  *Id.* at 715 n.6.

---

that have addressed the issue, including this one, also all agree that *Alleyne* does not apply to cases on collateral review.  *See, e.g., Pettaway v. United States*, Civil Action No. 13–0546–WS–C; Criminal Action No. 07–0182–WS, 2013 WL 6385822, at *4 (S.D. Ala. Dec. 6, 2013) ("The undersigned recommends that this Court decline to chart the path outlined by Pettaway and declare *Alleyne* retroactively applicable to cases on collateral review.  The undersigned makes this recommendation because the Supreme Court in *Alleyne*, a direct review case, gave no indication that its new rule applies retroactively on collateral review[.]" (citations omitted) (Chief Judge Steele, adopting recommendation of Magistrate Judge Cassady)); *accord Townes v. United States*, Civil Action No. 13–0403–CG–M; Criminal No. 07–00039–CG–M, 2013 WL 5934011, at *2-3 (S.D. Ala. Nov. 1, 2013) (Judge Granade, adopting recommendation of Magistrate Judge Milling); *see also, e.g., Rhodes v. United States*, Nos. CV 113–158, CR 111–097, 2013 WL 5797641, at *2 (S.D. Ga. Oct. 28, 2013); *Richards v. United States*, Criminal Action No. 1:07–CR–0412–18–CAP; Civil Action No. 1:13–CV–2376–CAP, 2013 WL 5636678, at *1 (N.D. Ga. Oct. 15, 2013); *United States v. Swatzie*, Nos. 4:99cr62–RH; 4:13cv476–RH/CAS, 2013 WL 5566488, at *1 (N.D. Fla. Oct. 7, 2013) (noting, "it is virtually certain that the Eleventh Circuit ultimately will hold that *Alleyne* is not retroactively applicable to cases on collateral review" (citing *McCoy v. United States*, 266 F.3d 1245, 1256–58 (11th Cir. 2001) (which held that *Apprendi*—the holding of which was extended by the holding in *Alleyne*—was not retroactively applicable to cases on collateral review))); *Dilbert v. United States*, No. 8:13–CV–2189–T–30MAP; Crim. Case No. 8:11–CR–631–T–30MAP, 2013 WL 5408444, at *3 (M.D. Fla. Sept. 25, 2013).

*Id.*; *accord Lopez v. United States*, 522 Fed. App'x 684 (11th Cir. June 26, 2013) (per curiam) (in which the Eleventh Circuit recently vacated an order denying habeas relief—on the ground that counsel violated a defendant's constitutional right to testify—and remanded the case for an evidentiary hearing); *see also Williams v. United States*, Civil No. 08-00513-CG-N; Crim. No. 04-00197-CG, 2010 WL 1382762, at *5 (S.D. Ala. Mar. 3, 2010) (setting forth two additional grounds for not conducting an evidentiary hearing: (1) where the petitioner's version of the facts has already been accepted as true (citing *Turner v. Crosby*, 339 F.3d 1247, 1274-75 (11th Cir. 2003)); and (2) where the "the district court can determine the merits of the ineffectiveness claim based on the existing record" (quoting *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983))), *report and recommendation adopted*, 2010 WL 1382761 (S.D. Ala. Apr. 1, 2010).

There simply is no need for an evidentiary hearing. On the existing record, Ward has not presented non-conclusory facts that, if true, would entitle him to relief.

### III.   Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability

may only issue where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Ward is not entitled to a certificate of appealability on his three ineffective-assistance-of-counsel claims. Where, as is the case for Ward's IAC claims here, a habeas petition is being denied entirely on the merits of an underlying constitutional claim, a COA should issue only when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also id.* at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983), includes a showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (quotation modified). With respect to Ward's ineffective-assistance-of-counsel claims, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issues presented is adequate to deserve encouragement to proceed further. Accordingly, Ward is not entitled to a certificate of appealability as to these claims.

Similarly, because his non-ineffective-assistance-of-counsel claim (Ground Four) is procedurally barred, Ward is not entitled to a certificate of appealability on

that claim. Where, as is the case for this claim, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484; *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (internal quotation marks omitted)). Inasmuch as unexcused procedurally defaulted claims are barred from a § 2255 proceeding, *see Lynn*, 365 F.3d at 1234, a reasonable jurist could not conclude either that this Court is in error in dismissing those claims in the instant petition or that Ward should be allowed to proceed further on those claims. *See Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that [Ward] should be allowed to proceed further.").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation, the objecting party may bring this argument to the attention of the district judge in the objections permitted to this

report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011)[11]; *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

## IV.    <u>Conclusion</u>

Because the Magistrate Judge is of the opinion that (1) as to the ineffective-assistance-of-counsel claims (Grounds One, Two, and Three), Ward has not shown that his rights were violated; and (2) his claim against the Court (Ground Four) has been procedurally defaulted, it is **RECOMMENDED** that the habeas petition (Doc. 92, as amended by Doc. 98) be **DENIED** and that the Court find that Ward is not entitled to a certificate of appealability and is therefore not entitled to appeal *in forma pauperis*.

## V.    <u>Notice of Right to File Objections</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.   In order to be specific, an

---

[11]    It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability, on October 11, 2011.   (*See* Doc. 14 in CA-11-0165-WS-C.)

objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 9th day of December, 2013.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**